## UNITED STATES DISTRICT COURT FOR

## THE DISTRICT OF COLUMBIA

KATRINA L. WEBSTER                   }
43184 GATWICK SQ.                    }
ASHBURN, VA 20147                    }
703-862-3271                         }
                                     }
**Plaintiff**                        }
                                     }
                                     } **March 3, 2026**
**v.**                               }
                                     }
                                     }   Case: 1:26-cv-00754   JURY DEMAND
**JOHN C. PHELAN,**                  }   Assigned To : Mehta, Amit P.
                                     }   Assign. Date : 3/4/2026
                                     }   Description: Employ. Discrim. (H-DECK)
                                     }
**Defendant.**

## COMPLAINT

### INTRODUCTION

Plaintiff, Katrina L. Webster, proceeding pro se, is a Black woman over the age of forty who has

been continuously employed by the Department of the Navy's Strategic Systems Programs

("SSP") since June 22, 1998, as a Secretary. For more than twenty-seven years, Plaintiff has

performed her duties faithfully and competently. Despite her tenure, experience, and

qualifications, Plaintiff has been systematically denied promotional opportunities and subjected

to discriminatory, retaliatory, and hostile treatment.

Plaintiff brings this civil action against Defendant, John C. Phelan, in his official capacity as

Secretary of the Navy, for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e et seq., as amended; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §

621 et seq.; and the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq.

1/27

RECEIVED

MAR 0 4 2026

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Defendant, acting through SSP supervisors, managers, and agents, engaged in unlawful employment practices, including but not limited to:

1. Race Discrimination (Disparate Treatment) – Failing and refusing to promote Plaintiff during her more than 27.5 years of employment because she is Black.

2. Age Discrimination – Treating Plaintiff less favorably and denying advancement opportunities because of her age, in violation of the ADEA.

3. Disability Discrimination (Physical Handicap) – Discriminating against Plaintiff on the basis of her physical impairment and failing to ensure equal terms, conditions, and privileges of employment as required under the Rehabilitation Act.

4. Retaliation – Retaliating against Plaintiff for engaging in protected Equal Employment Opportunity ("EEO") activity, including the improper disclosure of her confidential EEO activity to individuals with no legitimate need to know.

5. Race-Based and Retaliatory Harassment – Subjecting Plaintiff to humiliating and stigmatizing treatment, including being labeled "trouble" by contractor Richard Garland, and permitting retaliatory disclosure of her protected activity, thereby undermining her professional standing and promotional prospects.

6. Hostile Work Environment – Maintaining and permitting a work environment permeated with discriminatory and retaliatory conduct where:

   (a) Supervisors and members of management had actual or constructive knowledge of retaliatory behavior directed at Plaintiff; and

   (b) Supervisors condoned, tolerated, or inadequately responded to such conduct in a manner demonstrating indifference and unreasonableness under the circumstances.

Defendant's conduct has caused Plaintiff economic loss, professional stagnation, emotional distress, reputational harm, and ongoing workplace hostility.

Plaintiff seeks all relief authorized by law, including declaratory relief, injunctive relief, back pay, front pay, compensatory damages, equitable relief, litigation expenses, and reasonable attorney's fees and costs.

## I. JURISDICTION AND VENUE

1. This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq.

2. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-16(c).

3. Venue is proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(e) because Plaintiff was employed in Washington, D.C., the unlawful employment practices occurred in this District, and Defendant maintains offices here.

## II. PARTIES

4. Plaintiff Katrina L. Webster was, at all relevant times, employed by the Department of the Navy as a Secretary (OA), Strategic Systems Programs (SSP), Washington Navy Yard, Washington, D.C.

5. Defendant John C. Phelan is the Secretary of the Navy and is sued in his official capacity. The Department of the Navy is Plaintiff's employer within the meaning of Title VII and the ADEA.

6. Admiral Johnny Wolfe, CAPT Patrick Croley, CDR/CAPT Errol Watson, CDR/CAPT Robert Darrell Blanchard as agents.

3/27

### III. ADMINISTRATIVE EXHAUSTION AND FINAL AGENCY ACTION

7. Plaintiff has timely initiated and exhausted all administrative remedies required under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq., and, where applicable, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.

8. In this action's prior iteration, this Court dismissed Plaintiff's retaliation-by-disclosure claim and related allegations without prejudice for failure to exhaust administrative remedies. See Memorandum Opinion dated September 30, 2024, Case No. 1:23-cv-02716 (APM) .

9. Following the Court's dismissal without prejudice, Plaintiff timely resumed administrative proceedings consistent with the directive of the United States Court of Appeals for the District of Columbia Circuit and applicable EEOC regulations.

10. On February 4, 2025, the Equal Employment Opportunity Commission ("EEOC"), Office of Federal Operations, issued a Decision on Request for Reconsideration, Request No. 2023000882 / Appeal No. 0120181068 – **See exhibit A**, expressly holding that Plaintiff's claim of reprisal based on the disclosure of her protected EEO activity was properly before the Commission, reinstating the claim, and denying the Agency's request for reconsideration.

11. Relevant here, Plaintiff filed EEO Complaint No. DON-23-00030-00033 (with amendments on January 26 and April 10, 2023), alleging discrimination and harassment based on race (Black/African-American), age, and reprisal for prior protected EEO activity.

12. On December 5, 2025, the Department of the Navy issued a statement of claims within its Final Agency Decision (FAD) in Agency Case No. DON-23-00030-00033 – **See exhibit B**, addressing Plaintiff's claims of discrimination and harassment based on race, age, and reprisal,

4/27

including allegations of disparate treatment, comparator misrepresentation, and retaliatory personnel actions.

13. Part B of Judge Mehta's "MEMORANDUM OPINION" for Civil Case No. 23-cv-2716 states, "As to Plaintiff's remaining claims, she has failed to exhaust Count II and that portion of Count III that focuses on the disclosure of her EEO activity. Title VII requires a federal employee to "timely exhaust administrative remedies before bringing their claims to court."

14. Retaliation based on her employer's disclosure of her protected Equal Employment Opportunity ("EEO") activity id. ¶ 63; See also the alleged NIMA/NGA EEO disclosures by James Clapper Jr. and Jack Rickert, which appear to have been leaked to Plaintiff's Department of the Navy management. Specifically, Plaintiff's address and phone number appear on page 000379 -  the Formal EEO Complaint form. **See Exhibit D, pp. 000349 through 000380**. The disclosure of this EEO activity to SSP management initiated and contributed to the discrimination Plaintiff subsequently experienced, including numerous non-selections for promotion throughout Plaintiff's more than 27.5-year career.

15. Race discrimination based on that disclosure, contractor Richard Garland calling her "trouble," and her lack of promotion, id. ¶ 70; Case No. 23-2716, ECF No.14.

16. As stated previously Following the Court's dismissal without prejudice, Plaintiff timely resumed administrative proceedings consistent with the directive of the United States Court of Appeals for the District of Columbia Circuit and applicable EEOC regulations.

17. On February 4, 2025, the Equal Employment Opportunity Commission ("EEOC"), Office of Federal Operations, issued a Decision on Request for Reconsideration, Request No. 2023000882 / Appeal No. 0120181068 – See exhibit A, expressly holding that Plaintiff's claim of reprisal

based on the disclosure of her protected EEO activity was properly before the Commission, reinstating the claim, and denying the Agency's request for reconsideration.

18. Agency Case No. DON-23-00030-00033 STATEMENT OF CLAIMS1 – See Exhibit B.

19. Complainant alleged that the Agency discriminated against her and subjected her to harassment based on race (Black), age (Year of Birth [YOB] 1964) and reprisal (prior EEO activity) when:

20. a. On September 20, 2022, she did not receive an on the spot award;

21. b. On September 30, 2022, she did not receive a close-out review or receive a performance award for Fiscal Year (FY) 2022;

22. c. On October 3, 2022, her prior EEO activity was disclosed;

23. d. On October 12, 2022, her telework agreement was cancelled, her request to continue teleworking was denied, and she was required to initiate a Reasonable Accommodation request in order to continue teleworking;

24. e. On October 12, 2022, her tour of duty was changed requiring her to arrive at work no later than 0830;

25. f. On October 21, 2022, she was ordered not to forward/send work emails to her private account;

26. 1 For clarity and ease of analysis, we have slightly re-numbered Claims 1-2 as presented below from how the Department of the Navy's original Notice of Acceptance, as amended, outlined them.

27. g. As recently as December 20, 2022, management has not implemented her Individual Development Plan (IDP);

28. h. On January 1, 2023, she received an unfavorable contribution award for FY 2022.2

6/27

29. 2. Complainant also alleged that the Agency discriminated against her and subjected her to harassment based on reprisal (prior EEO activity) when:

30. a. On March 2, 2023, she was directed to move from her cubicle to sit with contractors; and

31. b. On or about March 14, 2023, she was tasked with completing an assignment without receiving training to complete the task.

32. Plaintiff's Declaration for Agency Case No. DON-25-00030-00517 – **See exhibit C**.

33. Plaintiff's Declaration for Case No. DON-23-00030-00033 – **See exhibit D**,

34. Plaintiff timely appealed related adverse determinations to the Equal Employment Opportunity Commission (EEOC), Office of Federal Operations. On January 21, 2026, the EEOC issued a Decision on Request for Reconsideration in EEOC Appeal No. 2024002585 (Agency case No. DON-23-00030-00033 )/ Request No. 2025003870, denying reconsideration and expressly advising Plaintiff of her right to file a civil action within ninety (90) days of receipt of that decision – **See exhibit E**.

35. The January 21, 2026 EEOC decision constitutes final agency action under 42 U.S.C. § 2000e-16(c), rendering Plaintiff's claims ripe for judicial review.

36. Agency Case No. DON-25-00030-00517 DON No. 25-00030-00517 STATEMENT OF CLAIMS - **See exhibit F**.

37. Complainant was discriminated against based on race and reprisal when, on January 23, 2025, she received an unfavorable annual performance review.

38. Complainant was discriminated against based on disability and reprisal when, on February 28, 2025, RMO1 removed approval of her full-time telework and compelled her to report to in-person work.

7/27

39. Complainant was discriminated against based on race and reprisal when, on May 15, 2025, RMO1 issued her a mid-point appraisal as opposed to a closeout appraisal.1

40. On February 6, 2025, Plaintiff initiated contact with an Equal Employment Opportunity (EEO) Counselor regarding additional discriminatory and retaliatory actions taken by management while she was employed with the Department of the Navy. Following counseling, the Agency issued a Notice of Final Interview and Right to File a Formal Complaint of Discrimination on March 6, 2025. Plaintiff timely filed a formal EEO complaint on March 14, 2025.

41. By letter dated March 24, 2025, the Department of the Navy accepted Plaintiff's complaint for investigation pursuant to 29 C.F.R. Part 1614. The Agency subsequently accepted amendments to the complaint by letters dated May 13, 2025, and May 19, 2025. The accepted claims included allegations of discrimination based on race, disability, and reprisal arising from: (a) an unfavorable annual performance appraisal issued on January 23, 2025; (b) the removal of Plaintiff's full-time telework and forced return to in-person work on February 28, 2025; and (c) the issuance of a mid-point appraisal in lieu of a closeout appraisal on May 15, 2025.

42. A formal investigation was conducted between April 21, 2025, and July 29, 2025. The Investigative File was provided to Plaintiff and her representative on August 18, 2025, along with notice of her right to request a hearing before the EEOC or to request a Final Agency Decision without a hearing.

43. On August 25, 2025, Plaintiff timely elected to waive a hearing and requested the issuance of a Final Agency Decision (FAD) pursuant to 29 C.F.R. § 1614.110(b).

8/27

44. On December 5, 2025, the Department of the Navy issued a statement of claims within its Final Agency Decision (FAD), DON No. 25-00030-00517 – **See exhibit F**, addressing the merits of Plaintiff's claims.

45. The FAD constitutes final agency action for purposes of judicial review. Plaintiff has therefore exhausted all administrative prerequisites to suit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 et seq. This action is timely filed within the applicable statutory period, and venue and jurisdiction are proper.

## IV. FACTUAL ALLEGATIONS

46. Plaintiff is a long-tenured federal employee who has worked in the same STRATEGIC SYSTEMS PROGRAMS AGENCY (SSP), the same Branch – SP23, in the same Secretarial position, and performing the same objectives – duties, for well over 27.5 years. Plaintiff will have 28 years of dutiful federal service this June 22, 2026, and has at all times relevant, performed her duties at the "Outstanding" – "5," level of performance. Despite Plaintiff's high level of performance, I have received low to no, salary increases, bonuses or awards. The low to no salary increases have been used to keep me in the NK – administrative support, and Broadband II for decades (ROI, p. 1369). Moreover, I cannot get a promotion. Due to the disclosure of my EEO activity, I have been denied every promotion that I have applied for. I have been forced by agency management to remain in the same position and grade for my entire, nearly 28 year career.

47. Noteworthy: The EEO Counseling phase of my non-selection for the Financial Management Analyst under Job Announcement (JA) No. ST-12035299-23-WB, in Agency Case No. MP-

2023-01456 was conducted by Mr. Gregory Jones, the same gentleman who served as the Investigator regarding the Compensatory Damages Supplemental Investigation for Request No. 2023000882 / Appeal No. 0120181068 – See exhibit A.

48. During the EEO Counseling phase, "Management Interview dated September 26, 2023. Mr. Carl Shields (Panel Member) SP333, Section Head of Program Protection Strategic Intelligence Program Protection and Security Branch, of the Nuclear Weapons Surety Division, NH-0340-4, Washington Navy Yard, Telephone: Office (202) 451-3549;Cell (703) 283-1433 – **See Exhibit I**.

49. EEO Counselor Mr. Gregory Jones conveyed, "Mr. Shields stated he was aware of [Plaintiff's] prior EEO activity. He stated he became aware of her prior EEO activity regarding the position that he was selected hired for years ago. He stated the Aggrieved filed a complaint when he was hired, but he did not recall the date as it occurred a long time ago. He added he as not the selecting official and to his knowledge, the Aggrieved's non-selection as not based on her prior EEO activity." – See Exhibit I, p. 6/8 and Exhibit, STATEMENT OF CLAIMS, p. 2 – "reprisa."

50. "Mr. Shields declared he served as an Interview Panel Member for the Financial Management Analyst, NH 2-3 position" – See Exhibit I, page 6/8.

51. This failure to promote claim is not a part of the instant complaint because it is before the OFO under a Request For Reconsideration (RFR). But it serves as an example of how the disclosure of Plaintiff's EEO activity has contributed to my not being promoted over the duration of my more than 27.5 year career. What's telling is that the situation is shrouded in lies and deception to hide disclosure discrimination:

52. LCDR Croley was the person who selected Mr. Shields to the GS-08 Secretarial position in the Missile Branch effective 11/09/2008. LCDR Patrick Croley, for whom Mr. Shields worked,

stated that he was the person who selected Carl Shields - See Exhibit K, p. 1/11. Yet CAPT Robert Vince, the person LCDR Croley was Deputy to, stated under oath on two separate occasions that he was the selecting official – **See Exhibit K, pp. 3/11 and 5/11, number 7.**

53. Documents prove that LCDR Croley was the selecting official and was the person who disclosed Plaintiff's EEO activity to Mr. Shields – his secretary, who didn't have a need to know – See Exhibit I.

54. Mr. Shields had matriculated from a GS-08 Secretary in the Missile Branch up to a NH Broadband IV, Branch Head Management position. When Mr. Shields was selected for the GS-08 Secretarial position over Plaintiff, he was not a federal employee, he was a contractor that I had once trained.

55. Plaintiff engaged in protected EEO activity prior to the challenged actions, including the filing of formal EEO complaints and appeals.

56. Defendant, through Plaintiff's management officials, had actual knowledge of Plaintiff's protected EEO activity.

57. A. Reprisal by Disclosure

58. On or about March 3, 2017, Plaintiff's Branch Head, CAPT Patrick Croley, disclosed Plaintiff's prior protected EEO activity to Branch Deputy Tareek Yameen who did not supervise Plaintiff and had no legitimate business need to know.

59. The EEOC determined that this disclosure violated confidentiality requirements and constituted unlawful reprisal because it was reasonably likely to deter protected EEO activity.

60. As a result of the disclosure, Plaintiff experienced stigma, embarrassment, and loss of workplace confidentiality.

11/27

61. a. Exhibit J represents a Workers' compensation claim that was filed regarding an incident in which I injured my knee when I had to take several flights of stairs after the SSP office elevators stopped working.

62. After my EEO activity had been disclosed to him by CDR Croley, LT Tarik Yameen retaliated against me by controverting my claim and eventually had it denied. I am still living with this intermittent pain, having never had the surgery to this day – **See Exhibit J**.

63. B. Discriminatory and Retaliatory Personnel Actions (2022–2023) – See Declaration Under Penalty of Perjury at Exhibit C.

64. Beginning in or about September 2022 and continuing through March 2023, Defendant subjected Plaintiff to a series of materially adverse actions, including: See Exhibit C.

65. These actions occurred under circumstances giving rise to an inference of discrimination and retaliation, including temporal proximity to Plaintiff's protected activity and disparate treatment compared to similarly situated employee(s).

66. C. Comparator Evidence

67. The agency is aware that Plaintiff has been subjected to Race Discrimination (Disparate Treatment) and has taken steps to mask it. Plaintiff has been treated less favorably than a similarly situated comparator, a White SSP Navy employee by the name of Melissa Temple. The FAD for DON-23-00030-00033, p. 26, lied about Ms. Temple's status as a federal employee to mask her association as the closest comparator to Plaintiff in proving discrimination according to race (Black) and disparate treatment – **See Exhibit B, p. 26**.

68. Page 26 of the FAD for DON-23-00030-00033 states, "CW2 Melissa Temple (unknown demographic information or prior EEO activity), EA, contractor/not a federal employee – One of Complainant's co-workers during the time period at issue" (Exhibit B, p. 26).



69. Plaintiff has been treated less favorably than Melissa Temple who serves as "Secretary (OA) SP01S-1445021" to the Admiral's Deputy (See exhibit 12, p. 2 of 18, block #7) – she and Plaintiff were the only two Secretaries in SSP until July 14, 2024, which is when Ms. Temple was promoted by the agency to the "Business Management and Technical Management Professional (NH) position of "Administration Specialist" on 7/14/2024 at an SSP office in the United Kingdom (UK) to eliminate Ms. Temple as a domestic comparator to Plaintiff – See Exhibit 12, p. 2 of 18 (ROI, p. 1243); and Exhibit 21, page 9 of 16).

**D. Telework, Retaliation, and Comparator Misrepresentation (2025)**

70. CDR Blanchard misrepresented Plaintiff's telework eligibility in an email dated 28 January 2025, directing Plaintiff to apply for Reasonable Accommodations ("RA") – See Exhibit 5, p. 1 of 2.

71. Blanchard's email responded to Plaintiff's 6 January 2025 email informing him that her medical condition qualified for Medical Telework pursuant to the "Telework and Workplace Flexibility Policy," dated 11 March 2022, page 5, section I, which states, "Medical Telework may also be used as a form of reasonable accommodation pursuant to the Rehabilitation Act of 1973" – **See Exhibit 5, p. 2 of 2.**

72. Because Plaintiff's situation already qualified for Medical Telework, the RA process that Blanchard directed Plaintiff to pursue was unnecessary and was used to harass Plaintiff and retaliate against for engaging in protected EEO activity – See Ex. P – Posting dated 2/4/2025; Exhibit Q, p. 19 of 31, para, 5 and 6.

73. On 7 February 2025, Blanchard approved Plaintiff for "full-time" telework – See Exhibit 8, p. 1 of 1.

74. Blanchard approved Plaintiff's telework based on Plaintiff's physician's professional assessment stating "that [Plaintiff] be granted the ability to work remotely through July 31, 2025" – **See Exhibit 7, p. 7 of 10 and Exhibit 7, p. 8 of 10**.

75. Despite this medical recommendation, Blanchard removed Plaintiff from "full-time" telework by email dated 28 February 2025 – **See Exhibit 6, p. 2 of 2 at number 4.**

76. Blanchard's removal of Plaintiff's telework occurred after his appointment as Branch Chief of SP23 had ended on 2/25/2025, as reflected in the email titled "Branch Head Moves," dated 1/31/2025 – **See exhibit 3, page 1 of 1**.

77. Blanchard removed Plaintiff's telework shortly after learning from the SSP EEO Counselor that Plaintiff had filed an EEO complaint on 2/5/2025 regarding her FY2024 performance appraisal.

78. In Plaintiff's FY2024 appraisal, Blanchard downgraded Plaintiff's rating in "Communication and/or Teamwork" from 5 – "Outstanding" to 3 – "Successful," eliminating Plaintiff from receiving an overall "Outstanding" performance appraisal.

79. Blanchard engaged in the same conduct in Plaintiff's FY2023 annual performance appraisal – See Exhibit 10, p. 2 of 15.

80. Prior to Blanchard assuming supervisory authority, Plaintiff consistently received 5 – "Outstanding" ratings across her performance objectives.

81. For example, Plaintiff's FY2022 appraisal reflected 5 – "Outstanding" for all objectives – See Exhibit 9, p. 2 of 14, consistent with Plaintiff's performance history dating back to FY2015.

82. Blanchard downgraded Plaintiff's "Communication and Teamwork" objective from Level 5 – "Outstanding" to Level 3 – "Successful" in FY2023 and again in FY2024.

83. These downgrades eliminated Plaintiff's closest comparator—Melissa Temple, a White female serving as the Secretary to Admiral Wolfe's Deputy—from meaningful comparison for purposes of proving disparate treatment based on race (Black).

84. Ms. Temple received 5 – "Outstanding" ratings for each of her objectives in FY2024 – See **Exhibit 12, p. 10 of 18.**

85. During the same period that Plaintiff's ratings were being downgraded, Ms. Temple was promoted to the professional "Administration Specialist" position on 7/14/2024 – **See Exhibit 12, p. 2 of 18,** and was given a $1,768.00 "lump sum performance payment" – **See Exhibit 12, p. 1 of 18.**

86. In contrast, Plaintiff received $2 FY2023 due to negative and demeaning statements Blanchard was making on my midpoint and annual appraisals to set me up to receive only $2 "in "Compensation Detail" – **See Exhibit 10, p. 3 of 15.**

87. Plaintiff received $0 FY2024 due to negative and demeaning statements Blanchard was making on my midpoint and annual appraisals to set me up to receive only $0 "in "Compensation Detail" – See FY2024 Salary Appraisal form – **Exhibit 11, p. 18 of 18.**

88. The agency management knew Plaintiff was being discriminated against due to disparate treatment racial discrimination, and blatantly lied to cover up discrimination by stating in the Final Agency Decision (FAD) for DON-23-00030-00033, "Melissa Temple (unknown demographic information or prior EEO activity), EA, contractor/not a federal employee – One of Complainant's co-workers during the period at issue" – **See Exhibit B**, page 26.

89. Several lies are stated here:

90. a. First, Ms. Melissa Temple's demographic is well known – she is White.

15
27

91. b. Second, She is not an Executive Assistant (EA), Ms. Temple was the Admiral's Deputy, Charles A. McLenithan's Secretary, until she was promoted on 7/14/2024 to the NH professional series position "Administration Specialist" – See exhibit 12, page 2 of 18 and Exhibit 12, page 15 of 18.

92. c. Plaintiff has a bachelor's degree in business and management and Ms. Temple does not have a college degree – **See Exhibit N.**

93. CDR Blanchard stated by letter to Plaintiff and SSP EEO Director, Dominique Slaughter, date 2/7/2025, "This letter is to notify you that an interim RA is approved as follows: full-time telework" – **See Exhibit 8, p. 1 of 1, 2**. He further states "This interim RA is approved through 9 March 2025." – **See Exhibit 8, p. 1 of 1, No. 4.**

94. On 2/5/2025, Plaintiff forwarded an email to SSP EEO Director, Ms. Dominique Slaughter, stating that "I would like to file the following Equal Employment Opportunity ("EEO") complaint: I have been discriminated against according to my Race (Black), Retaliation (prior EEO activity), disclosure of my EEO  activity, an ongoing hostile work environment as continuation of when I was working onsite, when I was given an unfavorable appraisal [rating of 3 in "Communication and/or Teamwork" and 45 contribution score], unfavorable "CRI" $0 salary increase, and an unfavorable bonus of $500.00.  I have attached my FY2024 appraisal."

95. I am alleging that once CDR Blanchard was informed by the SSP EEO Counselor that Plaintiff has filed an EEO complaint on my unfavorable FY2024 appraisal, CDR Blanchard retaliated against me by removing the "full-time" telework portion of the RA away from me, and in so doing, he discriminated against me for filing the EEO complaint on my FY2024 appraisal.

96. When he removed my "full-time" telework, Blanchard forced me to report to work in person.

16/27

97. It is clear that once my telework was removed, I would have to find transportation that would get me to work and pick me up 2 times per week to take me to PT 35 miles away.

98. It is clear that agency management forced me into reporting for work against my doctor's orders because they thought I would not be able to come in, and they could then say I was AWOL - absent without leave, and use this to remove me from my position.

99. If it were not for my husband driving me to work, and picking me up to take me to Physical Therapy (PT), putting 8,000 miles on our car.  I would not been able to get to work, and surely would not have been able to get to PT twice per week.  The agency management deliberately created a hardship that without my husband's help, would have made it nearly impossible for me to return to work and continue with PT – **See Exhibit Q, p. 16 of 31.**

100. Moreover, after signing that I could be placed on full time telework, he sent me an email removing that facet of the RA to retaliate against me for filing a formal EEO complaint on my FY2024 annual performance appraisal.

101. He sent me an email removing the full time telework after 25 February 2025, when he was no longer Branch Head of SP23, pursuant to the 1/31/2025 email guidance from Admiral Johnny Wolfe.

102. Plaintiff, like Ms. Temple, has had a history of level 5 "Outstanding" ratings in all objectives years prior to the arrival of CDR Blanchard as my Branch Head/Supervisor. While Ms. Temple's 5 ratings led to Awards, Bonuses, and Salary increases that have put her at the top of her Broadband (GS-10, step 10, and an eventual promotion to "Administration Specialist" – See Exhibit 21, page 10 of 16; and Exhibit 12, page 2 of 18.

103. In comparison, Plaintiff's level 5 ratings in her objectives began to decrease under CDR Blachard who stated, "Overall Ms. Webster is performing her duties with direction and has

17
27

opportunity for improvement to eventually reach the top of the level II band" (ROI – page 135)

Ms. Temple's "outstanding" performance assessment led to a promotion to a professional series position despite not having a college degree like the bachelor's degree Plaintiff possesses in Business and Management.

104. Ms. Temple's salary was $97,925.00 when she was promoted from a Secretary to "administration specialist SPUK00A-2702784." – See Exhibit G; Exhibit 12, p. 4 of 18.

105. Ms. Temple was in the "administrative support broadband," which tops out at Broadband level III – GS-10, step 10, which Ms. Temple had already achieved prior to being promoted – See Exhibit G, p. 13/31.

106. This broadband maxes out at GS-10, step 10 - $97, 925.00 - **See exhibit H** - "GS Locality Rates 2024 Washington-Baltimore-Arlington."

107. While Ms. Temple's FY2024 Level 5 "Outstanding" performance rating led to a promotion to a "Business Management and Technical Management Professional Position professional series position" that goes to GS-15, step 10 (see ROI, p. 1368 and Exhibit G at p. 3 of 31), Plaintiff's level 5 rating is lowered using negative and demeaning statements to ultimately eliminate Ms. Temple as a comparator to Plaintiff.

108. This is seen in the methodical downgrade of Plaintiff's annual assessments FY2023, FY2024, and the culmination in FY2025 annual assessment/appraisal – all of Plaintiff's objectives were lowered from 5 – "Outstanding" to 3 - "successful" within 7 months of a newly appointed supervisor, CDR Viera, who has only served 7 months from February 26, 2025 to 9/30/2025 as Plaintiff's FY2025 Branch Head/Supervisor of record; with a $1.00 Contribution Rate Increase (CRI) - **(See Exhibit L).**

18
27

109. This has ignited a new EEO complaint - this was done prevent Plaintiff from being promoted out of NK- "Administrative support" and to never Advance to "Business Management and Technical Management Professional Position professional series position" that goes to GS-15, step 10 (see ROI, p. 1368).

110. Plaintiff's annual assessments started going in a different direction due to the breaching of Plaintiff's EEO confidentiality, racial discrimination, retaliation, harassment and a hostile work environment; this was carried out by CAPT Croley and his subordinates – CDRs Watson, Blanchard, and CDR Viera.

111. When CDR Blanchard became Plaintiff's supervisor in FY2022 he succeeded CDR Watson.

112. Prior to his arrival, Plaintiff never received less than a level 5, "outstanding" rating under CDR/CAPT Watson, but upon Watson's departure as Plaintiff's Supervisor on July 17, 2022, he issued Plaintiff a mid-point performance appraisal with 2.5 months remaining in the Fiscal Year (FY), when there is no doubt that the only suitable performance assessment to issue Plaintiff at this time was a "closeout" assessment from CAPT Select Watson.

113. Watson decided to give Plaintiff a negative mid-point assessment as a means of passing the baton to Blanchard continuing subjecting Plaintiff to a harassing and hostile environment.

114. Blanchard gave Plaintiff her FY22 annual assessment after supervising her for only 2.5 months when Human Resources (HR) Regulations say one should supervise a person for at least 90 days to issue a performance assessment.

115. This was the beginning of Blanchard's using negative and demeaning statements to eventually begin to lower Plaintiff's objections from 5 to 3 in my annual assessments so that he adversely affect Plaintiff's comparison to her only other Secretarial comparator, Melissa Temple

– the culmination of this is the FY2025 annual assessment issued to her by CDR Viera that Plaintiff believes CDR Blanchard is the RMO for – **See Exhibit L**.

116. CDR Blanchard issued Plaintiff a 5 – "outstanding" performance assessment for FY2022.

117. "CDR Blanchard relieved CDR Watson as the SP23 Branch Head, and supervisor of record, on 18 July 2022, during the FY22 reporting cycle to assess Plaintiff's performance for FY22. CDR Blanchard began stating, "I partially concur with employee's self-assessment." Also Stating after 74 days in the FY 2022 rating period that "Overall Ms. Webster is performing her duties with direction and has opportunity for improvement to eventually reach the top of the level II band" (ROI – page 135) and answer to Affidavit, Nos. 23-37, pp. 6-19 of 33).

118. CDR Blanchard issue Plaintiff a level 5 "Outstanding" performance assessment because CDR Watson had previously issued me a 5 – "Outstanding" in FY2021" and was Plaintiff's supervisor of record from 01 October 2023 to 07/17/2024 – all but 2.5 months of FY2022.

119. Blanchard's negative and demeaning statements are also reflected in Plaintiff's FY2023 mid-point appraisal as a precursor to issuing me another unfavorable final assessment score.

120. In FY2023, CDR Blanchard lowered Plaintiff's "Communication and/or Teamwork" objective to level 3 – "successful." Which is the lowest it has been since prior to my FY2015 annual assessment – **See Exhibit 10, p. 2 of 15**.

121. CDR Blanchard gives Plaintiff a level 5 – "Outstanding" Performance with an "Average Raw Score" of 4.3.

122. The only reason why CDR Blanchard issue Plaintiff a 5 – "Outstanding" is because I believe an SSP Navy lawyer(s) told him it would be disparate treatment to rate Plaintiff less than "Outstanding," in my annual assessment, but the same applies to rating Plaintiff below level 5 in any of my critical elements that I have been performing over the past 27 and a half years.

123. This is an attempt to rate me lower than Ms. Temple to mask intentional disparate treatment that's been going on for decades.

124. In FY2024, the same negative and demeaning statements appear in Plaintiff's mid-point appraisal as a precursor to CDR Blanchard lowering Plaintiff's "Communication and/or Teamwork" objective in my FY2024 annual assessment for the same reason stated above.

125. Plaintiff's final assessment scores were lowered by CDR Blanchard for disparate treatment reasons and the SSP Navy Management is aware of the disparate treatment and have not even tried to take steps to stop it.

126. CDR Blanchard's tenure as my supervisor ended on February 25, 2025, pursuant "some moves the Admiral announced at the Military All Hands meeting" – **See Exhibit 3, p. 1 of 1.**

127. Instead of CDR Blanchard issuing Plaintiff a close-out appraisal for the month of February 2025, he chose to wait until May 15, 2025 – nearly 3 months after his tenure as my Branch Head/ Supervisor ended, to issue me a mid-point appraisal.

128. CDR Blanchard continue to make negative and demeaning statements to be used in Plaintiff's FY2025 annual assessment.

129. Plaintiff filed a formal EEO complaint on Blanchard giving me a mid-point instead of a "close-out" assessment- See Exhibit Q, p. 24 of 31, para. 2 – "mandatory".

130. In Plaintiff's FY2025 final assessment, The performance appraisal that I have received from CDR Viera, who has only been my Supervisor since February 26, 2025 – 7 months of the FY2025 rating period, has the 2 remaining objectives that Blanchard didn't lower in FY2024, lowered from 5 – "Outstanding" to level 3 "Successful."

131. This is the first time Plaintiff has had a rating this low.

132. This is an example of the coordinated hostile and harassing SSP Management environment I am being subjected to.

133. This is intentional disparate treatment and retaliation that is being delved out to discourage me from filing EEO complaints when I believe that I have been discriminated against – See Exhibit L.

134. Effective 29 January 2026, Plaintiff filed an informal EEO complaint against CDR Blanchard for the eventual lowering of all my objectives to level 3 – "successful" in my FY2026 annual assessment, since he was the person who issued Plaintiff a FY2025 midpoint instead of a closeout appraisal.

135. The midpoint Blanchard issued Plaintiff was nearly 3 months after his tenure ended as my SP23 Branch Head/Supervisor – **See Exhibit Q, p. 23 of 31, para. 5.**

136. The FAD for DON-23-00030-00033, page 26, has stated lies about SSP Secretary Ms. Melissa Temple's (White) status as federal employee to mask her association as Plaintiff's closest comparator in proving racial discrimination and disparate treatment.

137. Page 26 of the Final Agency Decision (FAD) states, "CW2 Melissa Temple (unknown demographic information or prior EEO activity), EA, contractor/not a federal employee – One of Complainant's co-workers during the time period at issue" – **See Exhibit B, p. 26.**

138. The agency is aware that Plaintiff is being discriminated against according to my race, disparate treatment.

139. Yet instead of owning up to it and compensating Plaintiff, the agency's management has resorted to retaliation, harassment/hostile work environment, to attempt to dissuade me from filing EEO complaints when I have been discriminated against.

140. For years Ms. Temple has had the same "Outstanding" appraisal rating as Plaintiff's and has received so many salary increases ( I am certain Awards and Bonuses too) that she is at the top of Broadband III - GS10, step 10.

141. While Ms. temple is at the top of broadband III, Blanchard is stating that Plaintiff, in my FY2023 and FY2024 annual assessments, who has been in the same position and performing the same duties for over 27 and a half years, "is performing my duties and continues to exhibit opportunity for improvement **to eventually reach the top of the level II band"** (ROI p. 1214). It is further disparate treatment that Ms. Temple is in Broadband III and Plaintiff is in Broadband II and we perform the same duties/ job objectives.

142. Plaintiff has been subjected to disparate treatment for well over my more 27.5 years with SSP and am asking the Court for retroactive promotion to the position of "administration specialist" at the GS-15, step 10 level, with backpay and matching contributions to my 401K (Thrift savings plan at 10%), back to when I was first called trouble by Mr. Garland.

143. Additionally, I am requesting **Front pay until age 67 at the GS-15, step 10 level** , at which time I plan to retire.

144. This is a reasonable request for someone in my position that management has stubbornly made clear will never promote and will continue to unlawfully discriminate against in the workplace, Awards, bonuses, and salary increases, and promotions.

145. For well over 27.5 years SSP management and has failed to promote me during my entire tenure with SSP.

146. This is a reasonable request that will give me and my family the justice and peace of mind we so rightly deserve.

147. HANDICAP DISCRIMINATION (Physical) – See Plaintiff's Affidavit, Exhibit C, pp. 1-33.

148. (a) an unfavorable annual performance appraisal issued on January 23, 2025; (b) the removal of Plaintiff's full-time telework and forced return to in-person work on February 28, 2025; and (c) the issuance of a mid-point appraisal in lieu of a closeout appraisal on May 15, 2025.

## V. CLAIMS FOR RELIEF

### COUNT I

**Retaliation (Reprisal) Title VII – 42 U.S.C. § 2000e-3(a)**

149. Plaintiff realleges and incorporates paragraphs 1–148.

150. Plaintiff engaged in protected EEO activity of which Defendant had actual knowledge.

151. Defendant subjected Plaintiff to materially adverse actions, including disclosure of confidential EEO activity, denial of awards, altered working conditions, and negative performance actions.

152. The EEOC determined that disclosure of Plaintiff's EEO activity constituted unlawful reprisal.

153. Defendant's actions were causally connected to Plaintiff's protected activity.

154. Plaintiff suffered emotional distress and other non-pecuniary harm.

### COUNT II

**Retaliatory Hostile Work Environment Title VII – 42 U.S.C. § 2000e-16**

155. Plaintiff realleges and incorporates paragraphs 1–154.



24

156. Defendant's actions, taken together, were severe or pervasive and altered the conditions of Plaintiff's employment.

157. The hostile work environment existed because of Plaintiff's protected EEO activity and constitutes unlawful retaliation:

158. A. Plaintiff respectfully requests that the Court Grants front pay at the GS-15,step 10 grade until age 67.

**COUNT III**

**DON No. 25-00030-00517)**

**Disability Discrimination and Retaliation**

**(Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq.)**

159. Plaintiff realleges and incorporates by reference all preceding paragraphs.

160. Plaintiff is an individual with a disability within the meaning of the Rehabilitation Act, having undergone multiple reconstructive shoulder surgeries resulting in substantial limitations on major life activities, including lifting, commuting, and performing manual tasks.

161. Defendant was aware of Plaintiff's disability and medical limitations, as Plaintiff provided medical documentation and engaged in the reasonable accommodation (RA) process.

162. Plaintiff requested reasonable accommodation in the form of full-time telework, supported by medical documentation, which had previously been approved on a temporary basis.

163. On February 28, 2025, Defendant rescinded approval of Plaintiff's full-time telework and compelled Plaintiff to return to in-person work, despite ongoing medical restrictions.

164. Defendant further subjected Plaintiff to adverse employment actions, including an unfavorable annual performance appraisal and the issuance of a mid-point appraisal rather than a closeout appraisal.

165. These actions occurred shortly after and because of Plaintiff's protected EEO activity and constituted retaliation prohibited under the Rehabilitation Act.

166. Defendant failed to engage in the interactive process in good faith and denied Plaintiff a reasonable accommodation without undue hardship justification.

167. Defendant's actions were intentional, retaliatory, and in violation of Plaintiff's rights under the Rehabilitation Act.

**VI. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in favor of Plaintiff on all counts;

B. Award compensatory damages in an amount to be determined at trial;

C. Award back pay, front pay, and all other make-whole relief available under law;

D. Order appropriate injunctive and declaratory relief;

E. Award costs and any other relief the Court deems just and proper – **See Exhibit Q, p. 6 of 31.**

**VII. JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted,

_Katrina L. Webster_,

Katrina L. Webster,     Plaintiff, Pro Se

26
27